ENGELBERT BACH et al. Appellees, vs. GRACE BACH et al.—
(MARY E. BRUCE, Appellant.)

*Opinion filed April 10, 1940.*

SAM M. TAYLOR, for appellant.

A. D. SITTLER, and JOHN W. COALE, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

In 1928, Engelbert Bach and Elizabeth Bach brought suit in the circuit court of Christian county against Edward H. Bach for an accounting of a partnership. At the same time, Engelbert Bach, Joseph S. Bach and Elizabeth Bach, filed another suit in the same court for partition of certain real estate. An answer and cross-complaint were filed to each suit by Edward H. Bach. All the original parties are now dead. In 1934, after the death of Edward H. Bach, Grace Bach, his widow, and Mary E. Bruce, his daughter,

were substituted as defendants and cross-plaintiffs. The causes were consolidated and, in 1939, a decree was entered adjudging that Mary E. Bruce had no interest in the property and that Grace Bach had a dower interest in the real estate; otherwise the relief claimed in the original complaint was granted. Only Mary E. Bruce appeals. A freehold is involved.

The evidence discloses that in 1901 Engelbert Bach, Sr., died, leaving Elizabeth Bach his widow and Joseph S. Bach, Fred Bach, Engelbert Bach, Jr., and Edward H. Bach, his sons and his only heirs. At the time of his death he owned a home and store building in the city of Taylorville and was also the owner of a one-fifth interest in a partnership shoe business conducted under the name of E. Bach & Sons. The partnership business was continued by the four sons but Fred G. Bach later withdrew and transferred his interest in the partnership and real estate to his remaining brothers. Engelbert Bach, Jr., entered into an independent drug business but retained his interest in the partnership. The shoe business was conducted by Edward H. Bach and Joseph Bach. In 1924, it was claimed by the other brothers that Edward Bach had withdrawn from the partnership $24,000 more than he was entitled to and thereupon the latter, on November 14, 1924, executed a deed, unsigned by his wife, conveying his interest in the real estate to his brothers, Engelbert Bach and Joseph Bach, and a bill of sale transferring his interest in the partnership to Engelbert Bach and his mother, Elizabeth Bach.

Edward Bach continued to manage the property until 1928, when it was claimed that he was again overdrawn and thereupon the deed and bill of sale were placed of record and Edward Bach removed as manager. He filed of record a paper designated a *"caveat,"* claiming that the deed and the bill of sale were ineffective, and the two suits were filed against him by the mother and brothers. Edward Bach procured employment elsewhere and the actions remained

dormant until 1934 when he died. The wife and daughter were substituted in his place and filed answers and cross-demands, alleging, in substance, that Edward Bach was not indebted and that the moneys he had withdrawn were only reasonable compensation for his services and that he was not mentally capable of executing a deed and bill of sale at the time they were made in 1924.

The errors assigned are based upon the claim the court decided against the weight of the evidence, except one assignment of law claiming an erroneous ruling on evidence.

At the time of the trial Edward H. Bach and Elizabeth Bach were dead and the brothers, Engelbert Bach and Joseph Bach, were incompetent to testify as to matters relating to the original settlement and conveyances. The hearing was had some thirteen years after the transaction occurred. The attorney representing appellees, who discussed the shortage with Edward H. Bach on behalf of his brothers, and the attorney who took the acknowledgment of the deed, testify that he was of sound mind at the time of the transaction. The witnesses for the appellant claim that during that year Edward Bach, due to the excessive use of liquor, was incapable of transacting or understanding business. It is not claimed that he was continuously and permanently incapacitated. These witnesses testify that part of the time he was competent and part of the time incompetent, but no witness was produced who gave evidence as to his condition at the particular time of the transaction complained of.

It is perfectly clear from the record that Edward Bach had drawn from the firm several thousand dollars more than he was entitled to and freely acknowledged it. He made a conveyance of his one-third interest in the real estate and in the shoe store to settle this indebtedness. He was allowed to remain in the store four additional years as an employee when the same trouble reoccurred, and then the deeds were placed on record. In the first answer filed,

Edward Bach claimed he was entitled to part of the withdrawals as reasonable pay for managing the business, and that he had not withdrawn over $8000 more than he was entitled to withdraw. From this answer it is plain he did withdraw more money than the other partners. In his conversation with appellees' attorney he conceded that he had helped prepare the audit and that the sums withdrawn as alleged by plaintiffs were correct. His interest in the real estate and partnership was of far less value than the amount claimed to have been wrongfully taken by him. The Partnerships act (Ill. Rev. Stat. 1939, chap. 106½, par. 18) provides that no partner is entitled to remuneration for acting in the partnership business except a surviving partner in winding up the business. This is declaratory of the common law that one partner cannot charge the firm or his co-partner for his services in attending to partnership business unless there is special agreement among the partners entitling him to do so. (*Brownell* v. *Steere,* 128 Ill. 209.) No such special agreement was either alleged or proved. In appellant's brief, fraud, duress, want of consideration and lack of mental capacity are set out as grounds for avoiding the transaction. These issues were raised after the death of Edward Bach and there is substantially no evidence to sustain any of these charges. The evidence shows that after Edward Bach left the store he held a position of trust in the city of Taylorville requiring capacity to perform. No affirmative steps were taken by him in his lifetime to invalidate the transfers. There is no showing, here, that the findings of the chancellor are against the weight of the evidence but, on the contrary, the record sustains the finding that the deed and bill of sale were given for ample consideration, and that the grantor had the mental capacity to transact business.

Before the master, Engelbert Bach and Joseph Bach were called as witnesses to deny certain facts testified to by appellant. On cross-examination questions were asked not

relevant to the direct examination, which were not answered under advice of counsel. Later, the witnesses were brought before the judge for examination, and he sustained objections to similar questions on cross-examination as not relevant to the direct examination. These witnesses could have been called as adverse parties under section 2 of the Evidence act (Ill. Rev. Stat. 1939, chap. 51, par. 2) but appellant did not avail herself of that right. There was no error in the court's ruling in limiting the cross-examination.

The rights of the surviving widow of Edward Bach were fixed by the decree of the court and she does not appeal. We find no error in the actions of the circuit court and the decree is, accordingly, affirmed.

*Decree affirmed.*